UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUIS PEREZ (#K-03835), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 5635 |
| vs. ) | |
| ) | Judge Feinerman |
| MARCUS HARDY, LARRY CROSS, RANDY ) | |
| MALKOWSKI, JOSE PRADO, SYTERA ) | |
| SANDERS, and IMHOTEP CARTER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Luis Perez, a state prisoner serving a lengthy term for first degree murder, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Doc. 6. The complaint alleges that while Perez was housed at Stateville Correctional Center, Marcus Hardy, Jose Prado, Randy Malkowski, Larry Cross, and Sytera Sanders ("State Defendants") subjected him to unconstitutional conditions of confinement, and also that he suffered from medical ailments to which Dr. Imhotep Carter was deliberately indifferent. State Defendants and Dr. Carter have moved separately for summary judgment. Docs. 48, 65. The motions are granted.

**Background**

Consistent with the local rules, State Defendants and Dr. Carter filed Local Rule 56.1(a)(3) statements of undisputed facts along with their summary judgment motions. Docs. 50, 67. Each substantive assertion of fact in the Local Rule 56.1(a)(3) statements cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each

1

paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, State Defendants and Dr. Carter filed and served on Perez a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. Docs. 51, 68.

Perez filed Local Rule 56.1(b)(3)(B) responses to the Local Rule 56.1(a)(3) statements. Docs. 84, 88. Perez admits ¶¶ 1-12, and 16-18 of State Defendants' Local Rule 56.1(a)(3) statement, Doc. 88 at ¶¶ 1-12, 16-18, and ¶¶ 1, 3-10, 16-17, 22-25, 29-35, 37-40, and 42-43 of Dr. Carter's Local Rule 56.1(a)(3) statement, Doc. 84 at ¶¶ 1, 3-10, 16-17, 22-25, 29-35, 37-40, and 42-43. Perez denies State Defendants' ¶¶ 13-15 and 19 and Dr. Carter's ¶¶ 2, 11-15, 18-21, 26-28, 36, and 41, but many of the denials violate Local Rule 56.1.

First, Perez's responses to Dr. Carter's ¶¶ 2, 18, 20-21, 26-28, 36, and 41 cite entire exhibits (one of which actually is a brief, not evidence) rather than specific portions of the exhibits. Doc. 84 at ¶¶ 2 (citing Perez's 11-page brief, another inmate's three-page affidavit, Perez's nine-paragraph affidavit, portions of the Illinois Administrative Code, and medical records), 18 (citing another inmate's three-page affidavit), 20 (same), 21 (citing Perez's 11-page brief), 26 (same), 27 (citing Perez's 11-page brief and nine-paragraph affidavit), 28 (citing Perez's nine-paragraph affidavit), 36 (citing an eight-page compendium of medical notes), 41 (citing another inmate's three-paragraph affidavit). This violates Local Rule 56.1(b)(3)(B). As the Seventh Circuit has held:

> [W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial. *Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate.* A court should not be expected to review a

2

lengthy record for facts that a party could have easily identified with greater particularity.

*Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (emphasis added); *see also Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 285 (7th Cir. 1997). And as a judge sitting in this District has explained:

> "[S]pecific reference" [in Local Rule 56.1(b)(3)(B)] means including proper … citations to exact pieces of the record that support the factual contention contained in the paragraph. *In other words, citations must include page (or paragraph) numbers, as opposed to simply citing an entire deposition, affidavit, or other exhibit document.* District courts are not obliged in our adversary system to scour the record looking for factual disputes. Factual allegations not properly supported by citation to the record are nullities.

*Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (emphasis added) (internal quotation marks and citation omitted); *see also Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004); *Erwin v. U.S. Dep't of State*, 2014 WL 242786, at *2 (N.D. Ill. Jan. 22, 2014); *Bolden v. Dart*, 2013 WL 3819638, at *1-2 (N.D. Ill. July 23, 2013); *Diadenko v. Folino*, 890 F. Supp. 2d 975, 982 n.4 (N.D. Ill. 2012). Because Perez has failed to properly controvert ¶¶ 2, 18, 20-21, 26-28, 36, and 41 of Dr. Carter's Local Rule 56.1(a)(3) statement, those paragraphs are deemed admitted.

Second, Perez's denials of State Defendants' ¶¶ 13 and 15 and Dr. Carter's ¶ 19 are contrary to the record. State Defendants' ¶ 13 asserts, "Plaintiff admits that he had access to water or some sort of beverage at least two times a day." Doc. 50 at ¶ 13. The cited portion of Perez's deposition (Doc. 50-2 at 24) supports that assertion. State Defendants' ¶ 15 asserts, "In July and August 2011, Plaintiff was provided with ice sometimes once a day, sometimes twice a day." Doc. 50 at ¶ 15. The cited portion of Perez's deposition (Doc. 50-2 at 25) supports that

3

assertion as well. Dr. Carter's ¶ 19 asserts, "Plaintiff's allegedly submitted sick call request, written on August 5, 2011, complains of stomach pains and makes no mention of a developing rash." Doc. 67 at ¶ 19. The cited exhibit (Doc. 67-4 at 2) supports that assertion.

Third, Perez's responses to State Defendants' ¶¶ 13 and 15 and Dr. Carter's ¶¶ 2, 18, 20, 21, 26, 28, and 41 make factual assertions that go well beyond what is reasonably necessary to respond to State Defendants' assertions. Doc. 84 at ¶¶ 2, 18, 20, 21, 26, 28, 41; Doc. 88 at ¶¶ 13, 15. A non-movant seeking to assert facts that go beyond what is fairly responsive to the movant's factual assertions must do so not in his Local Rule 56.1(b)(3)(B) response, but in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp. 3d 870, 874 (N.D. Ill. 2014); *Johnson v. Cnty. of Cook*, 2012 WL 2905485, at *12 (N.D. Ill. July 16, 2012) ("It is inappropriate for a non-movant to include additional facts, meaning facts extraneous to the substance of the paragraph to which the non-movant is responding, in a Local Rule 56.1(b)(3)(B) response. Rather, Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement under Local Rule 56.1(b)(3)(C) of any additional facts that require the denial of summary judgment.") (citations and internal quotation marks omitted). This requirement is not an exercise in formalism; rather, "[t]he rationale behind this rule is that if the non–movant includes additional facts in only the Local Rule 56.1(b)(3)(B) response, the movant is unfairly deprived of a vehicle under Local Rule 56.1 to dispute those facts because the rule permits movants to reply only to a Local Rule 56.1(b)(3)(C) statement, not a Local Rule 56.1(b)(3)(B) response." *Hall v. Vill. of Flossmoor Police Dep't,* 2012 WL 6021659, at *8 n.8 (N. D. Ill. Dec. 4, 2012). The court therefore will disregard the extraneous facts in ¶¶ 13 and 15 of Perez's Local

4

Rule 56.1(b)(3)(B) response to State Defendants' Local Rule 56.1(a)(3) statement and ¶¶ 2, 18, 20, 21, 26, 28, and 41 of his response to Dr. Carter's Local Rule 56.1(a)(3) statement. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008) (affirming the district court's refusal to consider additional facts set forth in the non-movant's Local Rule 56.1(b)(3)(B) response); *Eason v. Nolan*, 416 F. App'x 569, 569-70 (7th Cir. 2011) (same); *Levin v. Grecian*, 974 F. Supp. 2d 1114, 1118 (N.D. Ill. 2013).

Fourth, Perez disputes Dr. Carter's ¶¶ 13 and 14 on relevance grounds, asserting that those paragraphs are irrelevant to Perez's claims against Dr. Carter. Doc. 84 at ¶¶ 13-14. Because State Defendants' Local Rule 56.1(a)(3) statement includes materially identical paragraphs, there is no need to consider those paragraphs in Dr. Carter's Local Rule 56.1(a)(3) statement. In addition, Perez disputes Dr. Carter's ¶ 15, Doc. 84 at ¶ 15, even though he admitted the materially identical assertion in State Defendants' ¶ 16, Doc. 88 at ¶ 16. Accordingly, Perez's denial of Dr. Carter's ¶ 15 will be disregarded.

Fifth, the facts asserted in Perez's summary judgment briefs are disregarded to the extent that they are not properly set forth and supported in his Local Rule 56.1(b)(3)(B) responses. *See Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 801 (N.D. Ill. 2014); *Thornton v. Hamilton Sundstrand Corp.*, 54 F. Supp. 3d 929, 935-36 (N.D. Ill. 2014); *Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); *Garner v. Lakeside Cmty.*

5

*Comm.*, 2011 WL 2415754, at *1 n.1 (N.D. Ill. June 13, 2011) ("the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)[] statement of additional facts"); *Curtis v. Wilks*, 704 F. Supp. 2d 771, 789 (N.D. Ill. 2010) ("Any facts plaintiffs assert in their response brief that were not included in their LR 56.1 submissions will not be considered."); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material").

This court may and should strictly enforce Local Rule 56.1. *See Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[w]e have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions"); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("We have … repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."). Whether they seek or oppose summary judgment, parties have a right to expect that Local Rule 56.1 will be enforced and that facts not properly presented under the rule will be disregarded. *See Renta v. Cnty. of Cook*, 2011 WL 249501, at *1-2 (N.D. Ill. Jan. 26, 2011). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel") (citations

6

omitted); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Accordingly, the facts asserted in Defendants' Local Rule 56.1(a)(3) statements are deemed admitted, except for portions of State Defendants' ¶¶ 14 and 19 and Dr. Carter's ¶¶ 11 and 14. *See Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Ciomber*, 527 F.3d at 643-44; *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). The pertinent facts, stated as favorably to Perez as the record and Local Rule 56.1 allow, are as follows.

Perez was incarcerated at Stateville at all relevant times. Doc. 50 at ¶ 1. State Defendants worked at Stateville in various security and administrative capacities. *Id*. at ¶¶ 3-7. Dr. Carter, an employee of Wexford Health Sources, served as Stateville's medical director from July 25, 2011 through May 10, 2012. Doc. 67 at ¶ 6.

On July 28, 2011, the sink in Perez's cell stopped working and remained non-functioning for 34 days. Doc. 50 at ¶¶ 9, 10. The toilet continued to function. *Id*. at ¶ 10. A work order was put in to fix the sink on July 30, 2011, and another work order was put in on August 4, 2011. *Id*. at ¶ 11. The sink was fixed on August 31, 2011. *Ibid*. In July and August 2011, Perez received three meals per day. *Id*. at ¶ 12. Breakfast included an 8-ounce carton of milk and a 4-ounce

7

carton of juice. *Ibid*. Lunch and dinner included an 8-ounce carton of milk or a cup of water. *Ibid*. During the time that his sink was broken, Perez was provided with ice once or twice per day. *Id*. at ¶ 15. When Stateville was not on lockdown, Perez had access to showers three times each week. *Id*. at ¶ 16. Perez's cellhouse was on lockdown from August 21-24, 2011. *Id*. at ¶ 18. When Stateville was on lockdown, inmates received all meals in their cells, including beverages at breakfast and lunch and sometimes at dinner. *Id*. at ¶ 19; Doc. 88 at ¶ 19; Doc. 87 at 18, ¶ 25.

The complaint alleges that Dr. Carter was deliberately indifferent to Perez's medical needs by denying Perez adequate medical care to treat a skin rash and stomach pain developed due to his drinking and bathing in toilet water. Doc. 67 at ¶ 16. Prior to July 2011, Perez had submitted sick call request slips. *Id*. at ¶ 23. Responses to sick call request slips could take approximately two or three weeks or up to two or three months. *Ibid*. The response time depended on the severity of the medical issue, with serious cases receiving a faster response. *Id*. at ¶ 24.

When Perez began experiencing stomach pains and a rash, he communicated his complaints to medical technicians, who advised him to submit sick call passes. *Id*. at ¶ 16. Perez submitted sick call request passes to the Health Care Unit, which he claims went unanswered. *Id*. at ¶ 17. No copies of those sick call request forms contain any signature from Health Care personnel or any indication that they were submitted to or received by any individual in the Health Care Unit. *Id*. at ¶ 18. Perez's August 5, 2011 sick call request complained of stomach pains and makes no mention of a developing rash. *Id*. at ¶ 19. His August 10, 2011 sick call request complained of stomach pains and itchy skin and makes no mention of a developing rash.

8

*Id*. at ¶ 20. His August 14, 2011 sick call request was the first one that complains of a developed rash. *Id*. at ¶ 21.

Perez's rash developed in the second or third week of August 2011. *Id*. at ¶ 25. Perez saw Dr. Carter in the Health Care Unit on August 10. *Id*. at ¶ 26. The purpose of that appointment was to address Perez's seasonal allergies. *Id*. at ¶ 27. Dr. Carter took Perez's blood pressure and physically examined him by looking up his nostrils and into his ears. *Id*. at ¶ 28. Dr. Carter's notes recorded Perez's temperature and heart rate, noted that he "denies bowel or bladder" and "wanted his allergy medication renewed," and describes him as a healthy appearing male. *Ibid*. Dr. Carter prescribed Naprosyn, Flexeril and Periactin. *Id*. at ¶¶ 27, 43. (Perez was prescribed Hydrocortisone cream on September 28, 2011. *Id*. at ¶ 44.) At the appointment, Perez showed Dr. Carter his rash and complained of his stomach pain, and Dr. Carter instructed Perez to submit a sick call request form for any medical issues unrelated to the purpose of the August 10 appointment, which, as noted, was to address his seasonal allergies. *Id*. at ¶ 29. Perez never sent any letters addressed to Dr. Carter regarding his stomach pain or rash. *Id*. at ¶ 30. Perez never personally spoke to Dr. Carter other than at his August 10 appointment. *Id*. at ¶ 31.

Perez sent a letter to Warden Hardy on August 10, 2011 that made no mention of stomach pain or a developing rash, but his August 20 letter to Hardy did mention those ailments. *Id*. at ¶ 32. Perez's stomach pain would come and go throughout the day, and would not cause him to vomit. *Id*. at ¶ 33. There is no evidence properly presented under Local Rule 56.1 suggesting that Perez's stomach pain was at all serious or severe; the same is true of his rash. Perez's stomach pain resolved on its own at the end of 2011. *Id*. at ¶ 35.

Perez was scheduled for a sick call appointment on February 16, 2012, but did not attend. *Id*. at ¶ 36. Perez was placed on sick call for March 26, 2012, and was seen by Physician Assistant Latonya Williams. *Id*. at ¶ 37. Perez told Williams that his rash was partially resolved, and Williams told Perez that he would get hydrocortisone cream, which he received the next day. *Id*. at ¶ 39. Perez's rash went away in February or March of 2012. *Id*. at ¶ 40. Perez does not presently have any medical problems related to those just described. *Id*. at ¶ 42.

## Discussion

### I.  Conditions of Confinement Claim

Perez alleges the State Defendants subjected him to unconstitutional conditions of confinement because the sink in his cell was inoperable for 34 days. A prison official violates the Eighth Amendment if the official is "deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities,' including adequate sanitation and personal hygiene items." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Adequate food and facilities to wash and use the toilet are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (internal quotation marks and citation omitted). Eighth Amendment conditions of confinement claims have two elements. "First, an inmate must demonstrate that, objectively, the deprivation he suffered was sufficiently serious; that it, it must result in the denial of the minimal civilized measures of life's necessities." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (internal quotation marks omitted). "Second, an inmate must establish that the prison officials acted with a sufficiently culpable state of mind." *Ibid*. It is necessary here to address only the objective element.

To satisfy the objective element, a plaintiff's conditions of confinement must result in "extreme deprivations," *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002), because "routine discomfort is part of the penalty that prisoners pay for their offenses against society," *McCree v. Sherrod*, 408 F. App'x 990, 992 (7th Cir. 2011) (internal quotation marks and alteration omitted). A short-term breakdown of an inmate's sink does not rise to the level of an Eighth Amendment violation under circumstances where the inmate is otherwise provided with food, beverages, and access to showers and a toilet. The point is illustrated by *Mims v. Hardy*, 2013 WL 2451149 (N.D. Ill. June 5, 2013), where the court held that a broken sink for 45 days did not violate the Eighth Amendment where the inmate "had access to water or some form of beverage three times a day as part of his regular meal schedule and was able to fill his water bottle using a hose." *Id.* at *9. Here, although the record does not reflect that Perez was able to fill a water bottle using a hose, he had access to a toilet, was able to shower three times per week (except for a brief lockdown period), was served beverages at meal times, and was provided with ice once or twice per day. *See Brown v. Cook Cnty. Dep't of Corr.*, 2011 WL 689576, at *2 (N.D. Ill. Feb. 15, 2011) ("a broken sink in a cell that does not allow an inmate to have drinking water other than with meals usually does not support a § 1983 claim"); *Roberts v. Dep't of Corr.*, 1996 WL 526779, at *2-3 (N.D. Ill. Sept. 12, 1996) (holding that the objective element was not satisfied where the plaintiff was deprived of running water for thirteen days but was provided liquids with meals and given access to showers).

Perez cites cases where the objective element was satisfied, but those cases involve deprivations far more serious than a broken sink. In *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007), the inmate was held in a cell where the floor was covered with water, the sink

11

*and* toilet did not work, and the walls were smeared with blood and feces. In *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989), the inmate was housed in a cell with no running water (presumably for the toilet and sink) and where the walls were smeared with feces. And in *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992), the inmate was held in a cell that smelled of human waste, lacked adequate heating, contained dirty bedding, and had rusted out toilets, no toilet paper, and black worms in the drinking water. Here, by contrast, Perez's toilet worked and nothing in the record suggests that his cell suffered from any fecal or other contamination. While the 34 days Perez spent without a working sink was unfortunate, that deprivation was not an Eighth Amendment violation in light of the otherwise acceptable conditions of his cell and the beverages and ice he was provided throughout the day.

## II. Deliberate Indifference to Medical Conditions Claim

Perez alleges that Dr. Carter was deliberately indifference to his stomach pain and rash. To prevail on this claim, Perez must show that Dr. Carter "display[ed] deliberate indifference to a serious medical need." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Like a conditions of confinement claim, a medical deliberate indifference claim has an objective component, that the plaintiff's medical condition be "objectively serious," and a subjective component, that the defendants "acted with a sufficiently culpable state of mind" in that they had "subjective knowledge of the risk to the inmate's health and … disregard[ed] that risk." *Thomas*, 604 F.3d at 301 (internal quotation marks omitted). Because Perez does not satisfy the objective element, there is no need to address the subjective element.

The Seventh Circuit articulated the objective element as follows:

> Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual punishment … but this is provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized. … A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution.

*Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)) (alterations in original); *see also Elyea*, 631 F.3d at 857 (same); *Slater v. Lemens*, 400 F. App'x 109, 112 (7th Cir. 2010) (same); *Johnson v. Doughty*, 433 F.3d 1001, 1017 (7th Cir. 2006) (same); *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 810 (7th Cir. 2000) (same). Applying this standard, the Seventh Circuit has held that "a broad range of medical conditions may be sufficient to meet the objective element of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit." *Elyea*, 631 F.3d at 861; *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). The Seventh Circuit recently ruled that a prisoner's "claim of 'excruciating pain' from his skin infections" satisfied the objective element, *Myrick v. Anglin*, 496 F. App'x 670, 674 (7th Cir. 2012), while a two-centimeter spider bite did not where there was no indication that the prisoner was allergic to such bites, *Jellis v. Hulick*, 422 F. App'x 548, 550 (7th Cir. 2011). In *Gutierrez*, the Seventh Circuit cited *Snipes v. DeTella*, 95 F.3d 586, 591 n.1 (7th Cir. 1996), with approval for the proposition that "a toe whose toenail had been removed did not constitute a serious medical need, although, no doubt, quite painful." *Gutierrez*, 111 F.3d at 1372.

Perez's stomach pain—which, on the record established by the facts properly presented under Local Rule 56.1, did not cause vomiting, was resolved by the end of 2011, and was not at

13

all serious or severe—fails to satisfy the objective element. *See*, *e.g.*, *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (holding that the plaintiff's stomach disorders did not qualify as a "serious medical need"); *Tafari v. Weinstock*, 2010 WL 3420424, at *7 (W.D.N.Y. Aug. 27, 2010) (holding that the plaintiff's complaints of constipation, vomiting, and stomach pain were not objectively serious); *Zerby v. Fla. Dep't of Corr.*, 2009 WL 3418240, at *6 n.3 (N.D. Fla. Oct. 20, 2009) (holding that there was no objectively serious medical condition where the plaintiff "failed to allege facts suggesting that the stomach pain rose to the level of a serious medical need"); *Mortimer Excell v. Fischer*, 2009 WL 3111711, at *4 (N.D.N.Y. Sept. 24, 2009) ("[C]onclusory allegations of heart, chest, and stomach pain, without more, do not satisfy the objective prong of the Eighth Amendment test."); *Maurice v. N.Y.C. Dep't of Corr.*, 1997 WL 431078, at *3 (S.D.N.Y. July 30, 1997) (holding that the plaintiff failed to satisfy the objective element where he alleged only stomach cramps and diarrhea). These holdings are entirely consistent with the Seventh Circuit standard set forth above.

Nor does Perez's rash—which, like his stomach pain, is not shown by the facts properly presented under Local Rule 56.1 to have been serious or severe—qualify as an objectively serious medical condition. *See Sledge*, 564 F.3d at 108 (holding that eczema is not a "serious medical need" for purposes of a deliberate medical indifference claim); *Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (holding that "eczema of the feet [and] athlete's foot" are not objectively serious); *Tasby v. Cain*, 86 F. App'x 745, 746 (5th Cir. 2004) (holding that a prisoner's development of a rash "does not establish that he suffered 'serious harm'") (quoting *Farmer*, 511 U.S. at 847); *Smith v. Schwartz*, 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) ("Smith's allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a

painful, infected rash on his buttocks due to an inability to shower and clean his cell while Pinckneyville was locked down do not show a serious medical condition."); *Thompson v. Carlsen*, 2010 WL 3584409, at *11 (N.D.N.Y. Aug. 16, 2010) ("dry and cracked skin, and athlete's foot … are not 'serious' medical problems under Eighth Amendment standards"), *report and recommendation adopted*, 2010 WL 3584396 (N.D.N.Y. Sept. 7, 2010); *Gonzalez-Reyna v. Ellis*, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."); *Samuels v. Jackson*, 1999 WL 92617, at *1, *3 (S.D.N.Y. Feb. 22, 1999) (a prisoner's "papules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not qualify as a "serious medical need" for purposes of the Eighth Amendment) (brackets omitted). These holdings, too, are entirely consistent with the Seventh Circuit standard set forth above.

Based upon the lack of objective severity of Perez's medical conditions, he has no viable Eighth Amendment medical deliberate indifference claim.

## Conclusion

For the foregoing reasons, State Defendants' and Dr. Carter's summary judgment motions are granted. Final judgment will be entered. If Perez wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Perez appeals, he will be liable for the $505 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Perez could possibly be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or

appeals have been dismissed as frivolous, malicious, or failing to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid*. If Perez seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* Fed. R. App. P. 24(a)(1).

Perez need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Perez wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon *only* if the Rule 60(b) motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

August 27, 2015                                                                      
United States District Judge